*106173 1499*

STATE OF OKLAHOMA } S.S.
CLEVELAND COUNTY
**FILED**

SEP 19 2025

In the office of the
Court Clerk MARILYN WILLIAMS

# IN THE DISTRICT COURT OF CLEVELAND COUNTY
## STATE OF OKLAHOMA

CATHY ANN HODGE, Personal Representative )
of the Estate of Anthony Castillo Sanchez, )
Deceased, )
              **Plaintiff,** )
v. )
               )
NORMAN CITY POLICE )
DEPARTMENT, CITY OF NORMAN, )
OFFICER WILLIAM ALVES, an individual, )
OFFICER KYLE HARRIS, an individual, )
and DETECTIVE STEPHEN LUCAS, an )
individual, )
           **Defendants.** )

Case No. CJ-2025-1499
**ATTORNEY(S) LIEN CLAIMED**
**JURY TRIAL DEMANDED**

## PETITION

    COMES NOW, Plaintiff Cathy Ann Hodge, Personal representative of the Estate of Anthony Castillo Sanchez, Deceased, by and through her attorney, Evelyn I. Spaulding of Spaulding Law, PLLC. Any individual Defendants are being sued in both their individual and official capacities. For her cause of action against Defendants named above, Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1.    This Court has jurisdiction over Plaintiff's state-law claims pursuant to Oklahoma law and over federal claims pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as Plaintiff seeks redress for violations of rights secured by the U.S. Constitution.

2.    Venue is proper in this Court because the parties and many of the activities giving rise to these claims occurred in Cleveland County, Oklahoma and under 28 U.S.C. § 1391.

### IDENTIFICATION OF THE PARTIES

3.    Plaintiff is Cathy Ann Hodge on behalf of the estate of Anthony Castillo Sanchez. Ms. Hodge is the named Personal Representative for the Estate of Anthony Castillo Sanchez, deceased. Ms. Hodge is a resident of Oklahoma. Standing is proper under 12 O.S. § 1053.

4.    Defendant Norman City Police Department ("NPD") is a municipal police department organized under and existing pursuant to the laws of the State of Oklahoma and the ordinances of the City of Norman.

5.     City of Norman ("City") is a municipal entity organized under the laws of the State of Oklahoma and is responsible for the establishment, operation, and supervision of the Norman City Police Department.

6.     Officer William Alves ("Alves"), an officer with Norman Police Department, was at all times a relevant employee and/or agent of Defendant NPD or City, acting under color of state law. He is sued in both his official and individual capacities.

7.     Officer Kyle Harris ("Harris"), an officer with Norman Police Department, was at all times a relevant employee and/or agent of Defendant NPD or City, acting under color of state law. He is sued in both his official and individual capacities.

8.     Detective Stephen Lucas ("Lucas"), a detective with Norman Police Department, was at all times a relevant employee and/or agent of Defendant NPD or City, acting under color of state law. He is sued in both his official and individual capacities.

**FACTUAL BACKGROUND**

9.     Jewell Jean Busken ("Juli Busken" or "Busken"), a University of Oklahoma college student, was abducted and murdered on December 20, 1996.

10.     Immediately after the murder of Juli Busken, the narrative of the crime began to change, contrary to documented evidence.

11.     Inspector John Maddox with the Oklahoma City Police Department fraudulently submitted a report to the National Violent Criminal Apprehension Program ("ViCAP ") to submit and categorize the murder of Juli Busken as a sex-crime homicide. Maddox's report to VICAP for sodomy indicated there was evidence of anal assault and semen was identified in the body cavity of the victim.

12.     Despite this fraudulent report, there was no evidence to support the rape or sodomy of Juli Busken. Busken was fully clothed when found. Evidence initially collected from the panties worn by Busken did not show the presence of any foreign DNA. The autopsy report disproved any evidence of rape or sodomy.

13.     On March 20, 2000, an Affidavit and Application for Arrest Warrant was filed in the District Court of Cleveland County asking for a Warrant for Murder in the First-Degree, First-Degree Rape, Forcible Sodomy and Kidnapping against John Doe. The application contained language that stated that "Other findings by DR. PARKER indicate BUSKEN was vaginally raped and was also sodomized." District Attorney Tim Kuykendall

supporting the claims of the Arrest Warrant and stated that the main reason they decided to file charges against "John Doe" in 2000 was "to get around the statute of limitations problem".

14. There was no development on the murder of Busken and it remained a cold case for 8 years.

15. Defendants continued to keep the case alive, reaching out to news sources and media. The alleged crimes against Busken escalated from murder, to sodomy, to first degree rape and forcible sodomy to then a "particularly brutal rape and murder" all without corroborating evidence to support such claims.

16. Anthony Castillo Sanchez ("Sanchez") was formally charged on September 22, 2004, with the kidnapping, murder, rape and sodomy of Juli Busken based on an alleged DNA profile match.

17. Evidence was lost, compromised or suppressed. Leads were dropped. Investigations were misdirected. Timelines were altered. Forensic evidence was suppressed. All done to promote the narrative determined by the Defendants and Prosecutors.

18. Trial for Anthony Sanchez began with jury selection on January 30, 2006. Anthony Castillo Sanchez was found guilty of the first-degree murder, rape and sodomy of Juli Busken. Anthony Sanchez was sentenced to 40 years for rape, 20 years for sodomy and was given the death penalty under capital murder charges for the murder of Juli Busken.

19. Anthony Sanchez lost all appeals, a pardon was refused by Governor Kevin Stitt and the State of Oklahoma murdered an innocent man framed by department more interested in covering up facts that revealing them.

20. On September 21, 2023, Anthony Castillo Sanchez was wrongfully executed by lethal injection, placed in prison and kept there by unscrupulous individuals, in collusion with one another and other government agencies who created a formula that brought in money and fame and fortune for "getting their guy" regardless of whether they got the right individual or if the evidence even supported their claims.

21. The death of Anthony Sanchez was not an isolated, unfortunate tragedy. It was an ongoing systematically endorsed scheme in which all the Defendants participated.

22. The family of Anthony Sanchez demands accountability for the lies perpetuated upon the citizens of Oklahoma and this nation. The Defendants must be held accountable for their unlawful, unconstitutional, self-dealing actions that not only bring shame to them and the

hallowed duties entrusted to them by the citizens of Oklahoma, but their actions bring
shame to everyone and cast a pallor over the very judicial system created to provide justice.

## FIRST CAUSE OF ACTION
## BREACH OF DUTY OF CARE

23.    All preceding paragraphs are realleged and incorporated.

24.    The Defendants collectively and individually, through their officers, agents and employees
owed a duty of care to Anthony Sanchez under the U.S. Constitution, federal law, and
Oklahoma state law to exercise reasonable care in the performance of their law
enforcement functions, including the duty to investigate lawfully, to refrain from
fabricating or exaggerating charges, and to protect the constitutional and civil rights of
individuals in their custody and under their authority.

25.    Defendants, by and through the officers and the NPD, breached that duty of care by:

     a) failing to conduct a reasonable and competent investigation;
     b) failing to preserve and disclose all evidence favorable to the accused;
     c) failing to investigate and disclose certain NPD officers as viable suspects;
     d) withholding evidence by deliberate suppression of evidence exposing NPD officer
        misconduct, including contradictory statements and harassment;
     e) withholding evidence that contradicted the State's timeline;
     f) fabricating, exaggerating, or maintaining false versions of events related to the
        murder of Juli Busken;
     g) tampering with physical evidence;
     h) failing to preserve an unbroken, documented chain of custody for seized evidence;
     i) failing to require and maintain accurate and legitimate incident reports;
     j) acting with reckless disregard for Anthony Sanchez's rights and liberty;
     k) failing to adequately train, supervise, and discipline officers engaged in
        investigative misconduct;
     l) failing to adequately train, supervise, and discipline officers engaged in fabrication
        or suppression of evidence;
     m) failing to adequately train, supervise, and discipline officers in the proper handling
        of evidence; and
     n) failing to adequately train, supervise, and discipline officers engaged in targeted
        harassment of individuals, including Anthony Sanchez.

26.    As a direct and proximate result of Defendants' collective and conspiratorial
unconstitutional actions and breaches of duty, Anthony Sanchez was wrongfully arrested,
prosecuted, and deprived of his liberty, ultimately suffering reputational damage, severe
emotional distress, and other injuries culminating in his wrongful execution by the State of
Oklahoma. The family of Anthony Sanchez endured immeasurable suffering as they

witnessed their loved one unjustly abused and executed by the very system charged with serving and protecting its citizens.

27.    Plaintiff therefore seeks all available legal and equitable relief, including compensatory damages for the injuries suffered by Sanchez and his family, punitive damages against the individual Defendants to punish and deter similar misconduct, declaratory relief establishing that Defendants' conduct violated clearly established constitutional rights, and reasonable attorney's fees and costs as provided under 42 U.S.C. § 1983, 42 U.S.C. § 1988, and Oklahoma negligence law, including the Governmental Tort Claims Act, 51 O.S. § 151 et seq.

## SECOND CAUSE OF ACTION
## BREACH OF IMPARTIALITY AND FAIRNESS

28.    Plaintiff realleges and incorporates all preceding paragraphs.

29.    The Defendants collectively and individually owed a duty of impartiality and fairness to Anthony Sanchez under the U.S. Constitution, federal law, and Oklahoma state law while conducting their investigation and gathering evidence.

30.    Defendants owed a duty to conduct their work with impartiality and fairness. This duty arises under state law principles of negligence, constitutional due process protections, and statutory frameworks governing the integrity of investigation and the preservation of forensic evidence.  NPD, and its employees and agents, must follow established protocols during investigation, collection of evidence and maintaining a proper chain of custody, to prove evidence integrity under the Fourth and Fourteenth Amendments to the U.S. Constitution.

31.    The Oklahoma Evidence Code, 12 O.S. § 2401 et seq., governs relevance and admissibility of evidence in Oklahoma courts and requires that only relevant, reliable evidence be introduced in criminal proceedings. In addition, Oklahoma law establishes statutory standards of training and conduct for peace officers through the Council on Law Enforcement Education and Training (CLEET), 74 O.S. § 924. Law enforcement officers are further bound by constitutional due process requirements under the Fourteenth Amendment to ensure that investigations are fair, impartial, and free from fabrication or bias.

32. Defendants breached their duty of impartiality and fairness by suppressing exculpatory evidence, permitting perjured testimony, and failing to train or supervise officers on their constitutional obligations. These systemic failures reflected a policy and custom of deliberate indifference, ratified by the City of Norman, and became the moving force behind Anthony Sanchez's wrongful prosecution, conviction, and execution.

33. As a direct and proximate result, Sanchez was deprived of his liberty and life, and his family continues to suffer profound grief, stigma, and irreparable loss.

34. Plaintiff therefore seeks all available legal and equitable relief, including compensatory damages for the injuries suffered by Sanchez and his family, punitive damages against the individual Defendants to punish and deter similar misconduct, declaratory relief establishing that Defendants' conduct violated clearly established constitutional rights, and reasonable attorney's fees and costs as provided under 42 U.S.C. § 1983, 42 U.S.C. § 1988, and Oklahoma negligence law, including the Governmental Tort Claims Act, 51 O.S. § 151 et seq.

## THIRD CAUSE OF ACTION
## BREACH OF DUTY OF RESPONSIBILITY

35. All preceding paragraphs are realleged and incorporated.

36. Defendants owed Sanchez a duty to conduct criminal investigations in a fair, impartial, and competent manner, consistent with state law, established professional standards of law enforcement, and the constitutional rights of those under investigation. This duty includes:

    • A responsibility to properly investigate all reasonable leads;
    • An obligation to preserve and disclose exculpatory evidence as required under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny; and
    • A prohibition against suppression, fabrication or falsification of evidence, as recognized under the Due Process Clause of the Fourteenth Amendment and Oklahoma law.

37. The Defendants breached these duties by:

    • Failing to conduct a reasonable and competent investigation;
    • Failing to preserve and disclose all evidence favorable to the accused;
    • Failing to investigate and disclose certain NPD officers as viable suspects;
    • Withholding evidence by deliberate suppression of evidence exposing NPD officer misconduct, including contradictory statements and harassment;
    • Withholding evidence that contradicted the State's timeline;
    • Fabricating, exaggerating, or maintaining false versions of events related to the murder of Juli Busken;

- Tampering with physical evidence;
- Failing to preserve an unbroken, documented chain of custody for seized evidence;
- Failing to require and maintain accurate and legitimate incident reports;
- Acting with reckless disregard for Anthony Sanchez's rights and liberty; and
- Failing to adequately train, supervise, and discipline officers engaged in investigative misconduct, fabrication or suppression of evidence, proper handling of evidence or targeted harassment of individuals, including Anthony Sanchez;

38. The breaches of duty by Defendants directly and proximately caused Anthony Sanchez to suffer loss of freedom, lost wages and earning capacity, lost time with his children, severe emotional distress, damage to reputation, incurred attorney's fees and legal expenses. Ultimately Anthonay Sanchez lost his life through the direction actions of the detectives, the City of Norman Police Department, City of Norman and the State of Oklahoma. His family likewise endured profound suffering, including emotional anguish, stigma, and the loss of his companionship, guidance, and support.

39. Plaintiff therefore seeks all available legal and equitable relief, including compensatory damages for the injuries suffered by Sanchez and his family, punitive damages against the individual Defendants to punish and deter similar misconduct, declaratory relief establishing that Defendants' conduct violated clearly established constitutional rights, and reasonable attorney's fees and costs as provided under 42 U.S.C. § 1983, 42 U.S.C. § 1988, and Oklahoma negligence law, including the Governmental Tort Claims Act, 51 O.S. § 151 et seq.

## FOURTH CAUSE OF ACTION
## BREACH OF DUTY TO PRESERVE EVIDENCE

40. Plaintiff realleges and incorporates all preceding paragraphs.

41. Defendants had a constitutional duty to preserve evidence. This duty arises under the Due Process Clause of the Fourteenth Amendment, which prohibits the suppression or destruction of material exculpatory evidence. This constitutional duty requires law enforcement to preserve material exculpatory evidence (evidence that could prove innocence) and potentially other relevant evidence gathered in an investigation, particularly when there's bad faith in its destruction, omission or contamination. The accused cannot present a complete defense if crucial evidence is lost, destroyed, deliberately falsified or tainted by law enforcement.

42.     Defendants, acting under color of state law, suppressed material exculpatory evidence and failed to preserve evidence properly. NPD failed to train and supervise officers to preserve and disclose exculpatory evidence. NPD failed to establish or enforce policies to prevent alteration of victim property. NPD tolerated suppression of favorable leads. NPD allowed fabricated records to be passed forward as truth, deceiving prosecutors, appellate judges, and ultimately Judge Joe Heaton. This violated the duty of candor and reflects a departmental policy of tolerating false or misleading evidence.

43.     Defendants' failure to preserve material and exculpatory evidence violated their constitutional obligations under the Due Process Clause of the Fourteenth Amendment. NPD's breach of this duty was not a matter of negligence but deliberate indifference, reflecting systemic disregard for constitutional rights. These violations were not isolated acts of misconduct, but the product of departmental policies, customs, and practices that tolerated or encouraged the suppression and mishandling of evidence. Moreover, NPD and the City failed to adequately train or supervise their officers on the constitutional duty to preserve and disclose exculpatory evidence.

44.     As a direct and proximate result of Defendants' breaches, Anthony Sanchez was wrongfully prosecuted, convicted, and executed, suffering irreparable harm including the loss of liberty, livelihood, reputation, and ultimately his life. His family continues to endure profound grief, stigma, and the irreplaceable loss of his companionship, guidance, and support. These constitutional violations are actionable under 42 U.S.C. § 1983, and Defendants, including the City through its police department, must be held liable to vindicate Sanchez's rights and to deter future misconduct.

45.     Plaintiff therefore seeks all available legal and equitable relief, including compensatory damages for the injuries suffered by Sanchez and his family, punitive damages against the individual Defendants to punish and deter similar misconduct, declaratory relief establishing that Defendants' conduct violated clearly established constitutional rights, and reasonable attorney's fees and costs as provided under 42 U.S.C. § 1983, 42 U.S.C. § 1988, and Oklahoma negligence law, including the Governmental Tort Claims Act, 51 O.S. § 151 et seq.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF CIVIL RIGHTS UNDER FOURTH AMENDMENT,**
**FOURTEENTH AMENDMENT AND 42 U.S.C. § 1983**

46.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

47.     Defendants, through the individual employees, officers and policymakers, acted under color of state law and deprived Anthony Sanchez of rights secured by the Constitution of the United States.

48.     Section 1983 of the Civil Rights Act is federal law (42 U.S.C.) which allows individuals to file lawsuits against police officers and/or their employers (e.g., police departments and municipalities) for violations of their civil rights. To succeed in suing a police department under Section 1983, a private party must show injury from a "policy or custom" of the municipality.

49.     Defendants violated Anthony Sanchez's Civil Rights, along with violations of the Fourth Amendment, Fourteenth Amendment and 42 U.S.C. §1983 through the following ratified actions by Defendants, their employes or agents:

      a. Fraudulent, fabricated or suppressed evidence;
      b. Failure to investigate, including failure to disclose NPD officers as a viable suspect;
      c. Unlawful seizure;
      d. Malicious prosecution;
      e. Tolerance of perjury, falsification, harassment and due process violations; and
      f. Deliberate indifference to constitutional rights.

50.     In addition to federal claims, Defendants' conduct constitutes the common law tort of malicious prosecution. Under longstanding precedent, malicious prosecution occurs when charges are pursued without probable cause and with malice, causing injury to the accused.

51.     The Oklahoma Governmental Tort Claims Act (GTCA) governs state-law tort liability but does not bar federal civil rights actions. GTCA has no effect on § 1983 claims for violations of the U.S. Constitution. Thus, Anthony Sanchez's federal claims for unlawful seizure and malicious prosecution survive irrespective of GTCA defenses.

52.     Moreover, Oklahoma law, through 74 O.S. § 924, establishes a statutory framework requiring the Council on Law Enforcement Education and Training (CLEET) to set and enforce minimum standards of training and conduct for peace officers. Defendants' failure to comply with, implement, or enforce these standards within the Norman Police

Department demonstrates reckless disregard for constitutional protections. This systemic failure to train and supervise officers in accordance with statutory mandates provides further evidence of deliberate indifference and supports additional municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

53.    The Supreme Court has made clear that municipal liability under § 1983 may be premised on deliberate indifference to known or obvious risks of constitutional harm and Oklahoma law itself reflects this obligation. Under 74 O.S. § 924 (2024), state and local agencies are required to establish standards of training, oversight, and conduct for peace officers. The statute codifies the duty of government actors to ensure that law enforcement officers meet established professional standards to protect the public. By knowingly permitting unfit and untrustworthy officers to occupy positions of authority in capital investigations, Defendants disregarded both statutory and constitutional mandates.

54.    Policy makers for the Norman PD and City of Norman approved, condoned and failed to discipline the unconstitutional conduct of the department and its employees and agents. This collective action by those in positions of authority make all the misbehavior by the agencies, municipalities and acting agents an official act of government and constitutes a Constituted Ratification in direct violation of 42 U.S.C. § 1983 and *Monell v. Department of Social Services*.

55.    As a direct and foreseeable result of Defendants' unlawful actions and ratification of unconstitutional practices, Anthony Sanchez was wrongfully charged, prosecuted, and convicted of a capital crime he did not commit. These violations stripped him of his fundamental rights to due process and a fair trial, as guaranteed by the Fourteenth Amendment's Due Process Clause and the Sixth Amendment to the United States Constitution. The unlawful conduct of Defendants was the proximate cause of Sanchez's wrongful conviction, prolonged imprisonment, and the immeasurable personal, familial, and societal harms that flowed from it. The injuries Sanchez suffered were not incidental or speculative; they were the inevitable consequence of Defendants' systemic disregard for constitutional obligations, actionable under 42 U.S.C. § 1983.

56.    Plaintiff therefore seeks all available legal and equitable relief, including compensatory damages for the injuries suffered by Sanchez and his family, punitive damages against the individual Defendants to punish and deter similar misconduct, declaratory relief

establishing that Defendants' conduct violated clearly established constitutional rights, and reasonable attorney's fees and costs as provided under 42 U.S.C. § 1983, 42 U.S.C. § 1988, and Oklahoma negligence law, including the Governmental Tort Claims Act, 51 O.S. § 151 et seq.

### SIXTH CAUSE OF ACTION
### DEFENDANTS VIOLATED 42 U.S.C. § 1985 –THROUGH THEIR CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

57.    Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

58.    Defendants, acting in concert and under color of state law, conspired to deprive Anthony Sanchez of his constitutional rights, including his rights to equal protection of the laws and due process of law as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

59.    Specifically, two or more Defendants—including law enforcement officers, investigators, and prosecutors—entered into an agreement or understanding to fabricate evidence, pursue baseless charges, and obstruct justice to secure a wrongful conviction and death sentence against Sanchez. These coordinated actions included:

     a.  Fraudulent, fabricated or suppressed evidence;
     b.  Failure to investigate, including failure to disclose NPD officers as a viable suspect;
     c.  Unlawful seizure;
     d.  Malicious prosecution;
     e.  Tolerance of perjury, falsification, harassment and due process violations; and
     f.  Deliberate indifference to constitutional rights.

60.    The purpose and effect of this conspiracy was to deprive Sanchez of equal protection of the laws and to obstruct the due administration of justice, resulting in his wrongful arrest, prosecution, conviction, and execution.

61.    Under 42 U.S.C. § 1985(3), liability attaches when two or more persons conspire to deprive another of equal protection or equal privileges under the law, or to obstruct justice in furtherance of such deprivation. Defendants' agreement, overt acts, and resulting injuries fall squarely within the statutory prohibition.

62.    As a direct and proximate result of Defendants' conspiracy, Anthony Sanchez suffered irreparable constitutional injuries, including the wrongful loss of liberty, destruction of his reputation, severe emotional and psychological distress, financial ruin, and ultimately his

wrongful execution. The harm extended beyond Sanchez himself to his family, who endured profound grief, stigma, and emotional anguish, as well as the devastating loss of his companionship, guidance, and support. These injuries were not incidental but the inevitable consequence of Defendants' unlawful actions.

63.  Plaintiff therefore seeks all available legal and equitable relief, including compensatory damages for the injuries suffered by Sanchez and his family, punitive damages against the individual Defendants to punish and deter similar misconduct, declaratory relief establishing that Defendants' conduct violated clearly established constitutional rights, and reasonable attorney's fees and costs as provided under 42 U.S.C. § 1983, 42 U.S.C. § 1988, and Oklahoma negligence law, including the Governmental Tort Claims Act, 51 O.S. § 151 et seq.

## SEVENTH CAUSE OF ACTION
### DEFENDANTS VIOLATED 42 U.S.C. § 1986 THROUGH THEIR NEGLECT TO PREVENT CIVIL RIGHTS VIOLATIONS

64.  All preceding paragraphs are realleged and incorporated.

65.  Under 42 U.S.C. § 1986, every person who has knowledge of a conspiracy to interfere with civil rights under § 1985, and who possesses the power to prevent or aid in preventing the commission of such wrongs, yet neglects or refuses to do so, is liable to the injured party for the resulting harm.

66.  Defendants, including supervisory officials and policymakers, had actual knowledge or reason to know that officers and investigators under their authority were conspiring to fabricate evidence, pursue baseless charges, and obstruct justice in violation of § 1985. Despite having the ability, authority, and duty to intervene, Defendants failed to take action to prevent these constitutional violations.

67.  Examples of this neglect include:

    g.  Fraudulent, fabricated or suppressed evidence;
    h.  Failure to investigate, including failure to disclose NPD officers as a viable suspect;
    i.  Unlawful seizure;
    j.  Malicious prosecution;
    k.  Tolerance of perjury, falsification, harassment and due process violations; and
    l.  Deliberate indifference to constitutional rights.

68.  Defendants' omissions and refusal to act, despite their ability to prevent foreseeable harm, constitute neglect within the meaning of § 1986. Their inaction allowed the

conspiracy described in Count III (§ 1985) to succeed, thereby directly causing Anthony Sanchez's wrongful arrest, prosecution, conviction, and execution.

69. As a direct and proximate result of Defendants' conspiracy, Anthony Sanchez sustained grave constitutional injuries, including the wrongful loss of liberty, destruction of his reputation, severe emotional distress, financial harm, and ultimately his wrongful execution. These injuries extended to his family, who endured profound grief, stigma, and emotional anguish, as well as the permanent loss of his love, companionship, guidance, and financial support. Under Oklahoma's wrongful death statute, 12 O.S. § 1053, these family damages, including grief, loss of consortium, pecuniary loss, and mental pain and suffering, are fully compensable. The harms to Sanchez and his family were the foreseeable and inevitable consequence of Defendants' unlawful conduct.

70. Plaintiff therefore seeks all available legal and equitable relief, including compensatory damages for the injuries suffered by Sanchez and his family, punitive damages against the individual Defendants to punish and deter similar misconduct, declaratory relief establishing that Defendants' conduct violated clearly established constitutional rights, and reasonable attorney's fees and costs as provided under 42 U.S.C. § 1983, 42 U.S.C. § 1988, and Oklahoma negligence law, including the Governmental Tort Claims Act, 51 O.S. § 151 et seq.

## EIGHTH CAUSE OF ACTION
## MONELL VIOLATIONS - POLICY, PRACTICE,
## OR CUSTOM OF CONSTITUTIONAL VIOLATIONS

71. Defendants, acting through their law enforcement agencies, supervisors, and policymakers, maintained and enforced policies, practices, and customs that resulted in the deprivation of Anthony Sanchez's constitutional rights.

72. This pattern and practice of law enforcement misconduct mirrors the type of systemic violation recognized under 34 U.S.C. § 12601 (formerly 42 U.S.C. § 14141), which prohibits governmental authorities from engaging in law enforcement practices that deprive individuals of rights protected by the Constitution. While § 12601 does not provide a private right of action, it reflects Congress's express recognition that the type of institutionalized misconduct at issue here is unconstitutional and unlawful.

73. The misconduct inflicted on Anthony Sanchez was not an isolated incident but a foreseeable consequence of these official policies, practices, and customs. By knowingly

allowing such systemic failures. Defendants acted with deliberate indifference to the rights of persons subject to investigation and prosecution.

74.    The constitutional violations in Anthony Sanchez's case weren't isolated acts by rogue individuals. They were the result of sustained, institutional practices, ratified by supervisors, incentivized by funding structures, and carried out by employees acting under color of law. Each federal constitutional violation was carried out pursuant to official customs, policies, or deliberate indifference by the Norman Police Department, giving rise to municipal liability under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

75.    Each of the following claims identifies a specific policy, custom, or failure to train that created an unconstitutional risk of wrongful conviction and execution. Collectively, these establish *Monell* liability and expose the City of Norman and the Norman PD to civil accountability under 42 U.S.C. § 1983.

- Due process violations;
- Suppression of exculpatory and timeline evidence;
- Fabrication and tampering of evidence;
- Failure to investigate;
- Failure to preserve an unbroken, documented chain of custody for seized evidence;
- Contamination of evidence;
- Use of false or misleading testimony;
- Suppression of evidence misconduct;
- Tolerance of perjury and falsehoods;
- Failure to train, supervise or discipline officers and investigators engaged in investigative misconduct, fabrication or suppression of evidence, and targeted harassment of individuals;
- Violation of 42 U.S.C. § 1983 through department sanctioned strategic media leaks to reinforce false narratives and through department ratification of capital prosecution based on fabrication; and
- Reckless disregard for civil liberties and due process protections of individuals.

76.    The misconduct inflicted on Anthony Sanchez was not an isolated incident but a foreseeable consequence of these official policies, practices, and customs. By knowingly allowing such systemic failures, Defendants acted with deliberate indifference to the rights of persons subject to investigation and prosecution.

77.    The constitutional violations in Anthony Sanchez's case weren't isolated acts by rogue individuals. They were the result of sustained, institutional practices, ratified by supervisors, incentivized by funding structures, and carried out by employees acting under color of the law. Each federal constitutional violation was carried out pursuant to official

customs, policies, or deliberate indifference by City of Norman Police Department, giving rise to municipal liability under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). Each of the following claims identifies a specific policy, custom, or failure to train that created an unconstitutional risk of wrongful conviction and execution. Collectively, these establish Monell liability and expose the City of Norman and the City of Norman Police Department to civil accountability under 42 U.S.C. § 1983.

78.     The unconstitutional acts giving rise to Anthony Sanchez's wrongful prosecution, conviction and execution were not isolated errors, nor the product of negligence by individual officers. Rather, they were the direct result of entrenched municipal policies, customs, and practices maintained by the Norman Police Department and ratified by city policymakers.

79.     Collectively, the Monell claims demonstrate a coordinated institutional framework in which truth was subordinated to political expediency, financial gain, and conviction-driven outcomes. They were foreseeable and arose from a cohesive, deliberate framework of policies and customs whereby.

80.     Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), municipal liability attaches where a policy, custom, or practice is the "moving force" behind a constitutional violation. Here, each of the thirteen Monell claims represents a facet of an overarching institutional culture in which Leadership knowingly sanctioned and perpetuated these violations.

81.     This unified scheme directly and proximately caused Anthony Sanchez's wrongful prosecution, capital conviction, deprivation of liberty and ultimately wrongful execution, without due process of law.

82.     Plaintiff therefore seeks all available legal and equitable relief, including compensatory damages for the injuries suffered by Sanchez and his family, punitive damages against the individual Defendants to punish and deter similar misconduct, declaratory relief establishing that Defendants' conduct violated clearly established constitutional rights, and reasonable attorney's fees and costs as provided under 42 U.S.C. § 1983, 42 U.S.C. § 1988, and Oklahoma negligence law, including the Governmental Tort Claims Act, 51 O.S. § 151 et seq.

15

### NINTH CAUSE OF ACTION
### DEFNDANTS VIOLATED FEDERAL CIVIL RIGHTS
### STATUTES SPECIFIC TO GOVERMENTAL MISCONDUCT
### THROUGH 34 U.S.C. § 12601 (FORMERLY 42 U.S.C. § 14141) AND 18 U.S.C. § 242

83.    Plaintiff realleges and incorporates all preceding paragraphs.

84.    Plaintiff alleges that Defendants, through officers, investigators, agents and supervisory personnel, engaged in conduct that constituted criminal violations under federal law. While Plaintiff acknowledges that 18 U.S.C. § 242 and 34 U.S.C. § 12601 do not provide a private right of action, they are cited as compelling evidence of the unlawful and unconstitutional nature of Defendant's misconduct. These criminal breaches support Plaintiff's claims under 42 U.S.C. § 1983 and state law by demonstrating willful and systemic wrongdoing.

85.    Defendants, individually and collectively, acting under color of state law, willfully deprived Anthony Sanchez of rights secured by the Constitution. Their actions included:

     a.  Failing to conduct a reasonable and competent investigation;
     b.  Withholding evidence by deliberate suppression of material favorable to the defense, including contradictory statements and records of officer misconduct;
     c.  Failing to preserve an unbroken, documented chain of custody for seized evidence;
     d.  Fabricating, exaggerating, or maintaining false versions of events related to the murder of Juli Busken;
     e.  Tampering with physical evidence;
     f.  Withholding evidence that contradicted the State's timeline; and
     g.  Acting with reckless disregard for Mr. Sanchez's rights and liberty.

Each of these acts reflects intentional misconduct designed to deprive Mr. Sanchez of due process, a fair trial, and equal protection under the law, and thereby constitutes willful violations of 18 U.S.C. § 242.

86.    Defendants engaged in a systemic pattern or practice of conduct by law enforcement officers that deprives persons of rights protected by the Constitution and laws of the United States. This pattern is shown by:

     a.  Repeated failures to preserve and disclose evidence favorable to the accused;
     b.  Persistent refusal to investigate and disclose certain NPD officers as viable suspects, despite clear indications of their involvement;
     c.  Maintenance of false incident reports and refusal to require accurate, legitimate documentation;
     d.  Systemic failure to train, supervise, and discipline officers engaged in investigative misconduct, fabrication or suppression of evidence, mishandling of physical evidence, and targeted harassment of individuals including Mr. Sanchez.

These practices are not isolated missteps but demonstrate deliberate indifference and institutionalized misconduct within Defendant Police Department.

87. Although enforcement of 18 U.S.C. § 242 and 34 U.S.C. § 12601 rests with the U.S. Attorney General, its codification of the federal prohibition against systemic law enforcement misconduct underscores the unconstitutionality of Defendants' actions and supports Plaintiff's claims for declaratory and injunctive relief to prevent recurrence of these practices. While these provisions do not create a private right of action, they provide compelling evidence that the misconduct carried out and tolerated by Defendants falls squarely within the type of unconstitutional institutional practices that federal law seeks to prevent.

88. As a direct and proximate result of this pattern and practice of misconduct, Anthony Sanchez sustained grave constitutional injuries, including the wrongful loss of liberty, destruction of his reputation, severe emotional distress, financial harm, and ultimately his wrongful execution. These injuries extended to his family, who endured profound grief, stigma, and emotional anguish, as well as the permanent loss of his love, companionship, guidance, and financial support.

89. These outcomes were the foreseeable and inevitable consequence of Defendants' deliberate indifference and systemic violations of clearly established constitutional protections, as prohibited under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). Plaintiff therefore seeks not only damages for past harms but also equitable remedies in the form of declaratory and injunctive relief to mandate proper training, supervision, and independent review mechanisms within Defendant agencies, to protect against future violations of constitutional rights.

## TENTH CAUSE OF ACTION
### DEFENDANTS VIOLATED ANTHONY SANCHEZ' EIGHTH AMENDMENT RIGHTS AND EXPOSED ANTHONY SANCHEZ TO CRUEL & UNUSUAL PUNISHMENT

90. Plaintiff realleges and incorporates all preceding paragraphs.

91. Defendants, acting under color of state law, subjected Anthony Sanchez to conditions and treatment that constitute cruel and unusual punishment in violation of the Eighth Amendment, including:

- Wrongful prosecution and incarceration based on fabricated and suppressed evidence, which resulted in Anthony Sanchez enduring years of unjust imprisonment and the stigma of false sexual crime allegations;
- Exposure to extreme psychological harm, reputational destruction, and deprivation of basic human dignity as a direct result of fabricated charges designed to trigger harsher sentencing, which eventually led to the death of Anthony Sanchez;
- Deliberate indifference to Anthony Sanchez's constitutional rights, knowing that fabricated evidence, suppressed exculpatory materials and improper investigation placed Anthony Sanchez at grave risk of excessive punishment not authorized by law, which ultimately resulted in the execution of Anthony Sanchez.

92. As a direct and proximate result of Defendants' Eighth Amendment violations, Anthony Sanchez suffered wrongful imprisonment; exposure to harsher sentencing schemes, including the death penalty; severe emotional distress and psychological trauma; loss of dignity and personal security and finally, the loss of his life.

93. Plaintiff therefore seeks all available legal and equitable relief, including compensatory damages for the injuries suffered by Sanchez and his family, punitive damages against the individual Defendants to punish and deter similar misconduct, declaratory relief establishing that Defendants' conduct violated clearly established constitutional rights, and reasonable attorney's fees and costs as provided under 42 U.S.C. § 1983, 42 U.S.C. § 1988, and Oklahoma negligence law, including the Governmental Tort Claims Act, 51 O.S. § 151 et seq.

## ELEVENTH CAUSE OF ACTION
## WRONGFUL DEATH (12 O.S. § 1053)

94. Plaintiff realleges and incorporates all preceding paragraphs.

95. Pursuant to 12 O.S. § 1053, when the death of one is caused by the wrongful act or omission of another, the personal representative of the decedent may maintain an action against the person or entity who caused the death and recover damages for the benefit of the surviving spouse, children, and next of kin.

96. Defendants owed the decedent a duty to conduct investigations lawfully, impartially, and in good faith. This duty includes refraining from fabricating evidence, suppressing exculpatory material, and presenting false testimony that could expose a person to excessive punishment, including capital sentencing. Defendants breached these duties.

97. As a direct and proximate result of Defendants' wrongful acts, Anthony Sanchez suffered wrongful conviction, cruel and unusual punishment, and ultimately wrongful

death. The surviving family members suffered loss of companionship, guidance, and consortium, mental anguish and emotional suffering, loss of financial support, and funeral and burial expenses.

98. Defendants' actions constitute wrongful death under 12 O.S. § 1053, and Plaintiff is entitled to fully recover compensatory and punitive damages allowed by Oklahoma law.

99. Plaintiff therefore seeks all available legal and equitable relief, including compensatory damages for the injuries suffered by Sanchez and his family, punitive damages against the individual Defendants to punish and deter similar misconduct, declaratory relief establishing that Defendants' conduct violated clearly established constitutional rights, and reasonable attorney's fees and costs as provided under 42 U.S.C. § 1983, 42 U.S.C. § 1988, and Oklahoma negligence law, including the Governmental Tort Claims Act, 51 O.S. § 151 et seq.

## TWELFTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

100. Plaintiff realleges and incorporates all preceding paragraphs.

101. Oklahoma recognizes intentional infliction of emotional distress (also known as the tort of outrage) as a cause of action when a defendant's conduct is so extreme and outrageous as to go beyond all possible bounds of decency.

102. To prevail, Plaintiff must establish that the Defendants acted intentionally or recklessly; that Defendants' conduct was extreme and outrageous; that Defendants' actions caused emotional distress; and the emotional distress was severe. Here, Defendants' actions not only intentionally and recklessly caused emotional distress to Anthony Sanchez but the Plaintiff and his family suffered tremendously while they watched their loved one be executed by individuals and state agencies more concerned with making money than solving crimes and punishing guilty parties.

103. Defendants engaged in conduct that was extreme, outrageous, and beyond the bounds of decency, including fabrication, suppression and misrepresentation of exculpatory evidence, presenting false testimony with knowledge of its falsity, exposing Anthony Sanchez to wrongful imprisonment, capital punishment, reputational ruin and wrongful execution; and acting with malice, willfulness, and reckless disregard for Anthony Sanchez's constitutional rights.

104.   As a direct and proximate result of Defendants' actions, both Plaintiff and Anthony Sanchez suffered severe and enduring emotional harm, including extreme mental anguish and humiliation; loss of reputation and standing in the community; psychological trauma from Anthony Sanchez facing wrongful prosecution and capital punishment; loss of personal dignity and security and ultimately Anthony Sanchez lost his life when the State of Oklahoma injected him with a lethal injection which took his life.

105.   Defendants' conduct, while actionable under Oklahoma common law, also constitutes a violation of Anthony Sanchez's federal constitutional rights under 42 U.S.C. § 1983. By fabricating evidence, suppressing exculpatory material, and subjecting Anthony Sanchez to wrongful criminal proceedings, Defendants deprived Anthony Sanchez of liberty, and life, without due process of law, thereby inflicting emotional and psychological harm.

106.   Courts recognize that intentional misuse of state authority to subject individuals to wrongful prosecution and imprisonment constitutes actionable emotional distress and a violation of substantive due process.

107.   Plaintiff therefore seeks all available legal and equitable relief, including compensatory damages for the injuries suffered by Sanchez and his family, punitive damages against the individual Defendants to punish and deter similar misconduct, declaratory relief establishing that Defendants' conduct violated clearly established constitutional rights, and reasonable attorney's fees and costs as provided under 42 U.S.C. § 1983, 42 U.S.C. § 1988, and Oklahoma negligence law, including the Governmental Tort Claims Act, 51 O.S. § 151 et seq.

**DEFENDANTS' STATUS AS A STATE AGENCY, POLITICAL SUBDIVISIONS OR STATE EMPLOYEE DOES NOT GRANT THEM IMMUNITY OF THEIR ACTIONS UNDER 51 O.S. § 151 ET SEQ OR CASE LAW**

108.   Plaintiff realleges and incorporates all preceding paragraphs.

109.   Any immunity the Defendants may attempt to claim under the Oklahoma Governmental Torts Claims Act ("GTCA"), 51 O.S. § 151 et seq., contending that all actions were taken within the "scope of employment" are not valid here. While the GTCA provides certain immunities, it cannot and does not immunize conduct carried out pursuant to *unlawful or unconstitutional governmental policies*. 51 OK Stat § 153 et seq (2024).

110.   The GTCA defines "scope of employment" as duties performed "in good faith within the duties of office or employment" and pursuant to "lawfully assigned" tasks. 51 O.S. § 152(12).

111.   The Oklahoma Supreme Court has consistently held that the GTCA "does not extend immunity to acts of fraud, malice, or bad faith." See *Nail v. City of Henryetta*, 1996 OK 12, ¶ 13. Likewise, federal courts have made clear that the GTCA cannot shield unconstitutional conduct, particularly where false criminal charges are used to deprive a citizen of liberty in violation of the Fourth and Fourteenth Amendments. See *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

112.   Even if state immunity were arguable, Defendants' conduct is independently actionable under 42 U.S.C. § 1983. Defendants are not entitled to qualified immunity. Qualified immunity protects only those officials who act reasonably in light of clearly established law.

113.   The U.S. supreme Court directly addressed situations where fabricated or withheld evidence undermined the fairness of a trial in *Napue v. Illinois*, holding that a conviction cannot stand if the falsehood reasonably could have affected the jury's verdict.  Napue v. Illinois, 360 U.S. 264 (1959).

114.   Had Defendants not introduced fraudulent charges, suppressed or fabricated evidence, and permitted perjured testimony, the jury would not have been misled into convicting Anthony Sanchez. The manufactured evidence, suppression of exculpatory material, and false testimony created a distorted evidentiary record that deprived Mr. Sanchez of a fair trial. These unconstitutional actions directly influenced the verdict, fundamentally undermined the integrity of the proceedings, and altered the jury's decision-making process in a manner that led to his wrongful conviction.

<u>CONCLUSION</u>

115.   The suppression of exculpatory evidence, reliance on fraudulent or misrepresented evidence, failure to investigate or disclose the misconduct of fellow Norman Police Department officers, and the presentation of false testimony, including perjury and fabricated rape and sodomy charges, were central to securing a death sentence against Anthony Sanchez. These tactics violated fundamental constitutional protections and reflect a broader prosecutorial practice of inflating charges through manufactured sexual

allegations. Sanchez's case thus stands as a stark example of systemic abuse, raising grave concerns about the reliability of sex-related forensic evidence, compliance with disclosure obligations, and the administration of death penalty prosecutions in Oklahoma.

116.   Defendants' misconduct extended beyond this case, as they engaged in a broader pattern of misrepresenting or manufacturing evidence, suppression of evidence, failure to investigate and false testimony exposing the depth of institutional corruption and lack of accountability within the agencies involved.

117.   Plaintiff preserves all constitutional claims for appellate and Supreme Court review, including violations of the First, Fourth, Eighth, and Fourteenth Amendments. This includes claims based on fabrication of evidence, denial of access to the courts, cruel and unusual punishment through wrongful execution, and systemic due process violations committed under color of law. No court, state or federal, should tolerate the government to falsify rape or sodomy allegations, to suppress evidence and investigation to protect NPD officers, to fail to preserve evidence or to allow perjury on the witness stand. The public interest in preventing such conduct is overwhelming and federal oversight is essential.

## REQUEST FOR RELIEF

**WHEREFORE**, based on the allegations, Plaintiff Hodge requests this Court award her the following:

I.    Compensatory Damages against Defendants in an amount to be determined at trial for the wrongful conviction, imprisonment, and execution of Anthony Sanchez, and for the resulting pain, suffering, and loss endured by his estate and surviving family members;

II.    Survival and Wrongful Death Damages pursuant to Oklahoma's wrongful death statute, 12 O.S. § 1053, including pecuniary and non-pecuniary losses suffered by the estate and surviving family members, as well as survival damages for the conscious pain and suffering endured prior to execution;

III.    Punitive Damages against individual Defendants, including Officers William Alves and Kyle Harris and Detective Steven Lucas, for conduct undertaken with reckless disregard and deliberate indifference to the constitutional rights of Anthony Sanchez;

IV.    Declaratory Relief that the acts and omissions of Defendants violated the United States Constitution and clearly established federal law;

V.    Vacatur and Expungement Relief declaring Anthony Sanchez's conviction unconstitutional, vacating the conviction, expunging all related records, and declaring his execution unlawful;

VI.    Posthumous Clemency Recommendation declaring that Anthony Sanchez was wrongfully executed and recommending posthumous commutation or pardon to correct the constitutional wrong;

VII.    Injunctive Relief requiring the Norman Police Department to adopt policies, training, and supervision sufficient to prevent recurrence of similar constitutional violations;

VIII.    Court-ordered creation of a disciplinary database for officers with sustained findings of misconduct, subject to public disclosure.

IX.    Nominal Damages to vindicate Anthony Sanchez's constitutional rights in the event compensatory or punitive damages are deemed unavailable;

X.    Attorneys' Fees and Costs pursuant to 42 U.S.C. § 1988;

XI.    Litigation Expenses including reasonable costs for investigators, expert witnesses, and other necessary litigation support, in addition to attorneys' fees and taxable costs, pursuant to 42 U.S.C. § 1988 and applicable federal and state law; and

XII.    Such Other Relief as this Court deems just and proper to remedy the violations of constitutional rights and prevent recurrence of wrongful executions.

Respectfully Submitted,

Evelyn "Eve" I. Spaulding, OBA #36263
Spaulding Law, PLLC
PO Box 720322
Norman OK 73070
405-619-5788
spauldinglawpllc@gmail.com
ATTORNEY LIEN CLAIMED

23

## **VERIFICATION**

STATE OF OKLAHOMA          )
                                              ) SS:
COUNTY OF OKLAHOMA       )

I, Cathy Ann Hodge, being of lawful age, duly swears under penalty of perjury under the laws of Oklahoma that the above and foregoing statements, allegations and facts made herein are true and correct to the best of my knowledge, information and belief.

Sept 18, 2025
_____                    _____
       Date                                          Cathy Ann Hodge, Plaintiff

# 03-Norman PD Petition Minimized

Final Audit Report                                             2025-09-19

| | | | | |
|---|---|---|---|---|
| Created: | 2025-09-19 | | | |
| By: | Evelyn Spaulding (spauldinglawpllc@gmail.com) | | | |
| Status: | Signed | | | |
| Transaction ID: | CBJCHBCAABAAOGpL9vo99vuG/rfYZ_LSaaq88rCsEbxtQ | | | |

## "03-Norman PD Petition Minimized" History

- Document created by Evelyn Spaulding (spauldinglawpllc@gmail.com)
  2025-09-19 - 0:57:45 AM GMT

- Document emailed to Cathy Hodge (catcruiser101@yahoo.com) for signature
  2025-09-19 - 0:57:51 AM GMT

- Email viewed by Cathy Hodge (catcruiser101@yahoo.com)
  2025-09-19 - 4:34:33 AM GMT

- Document e-signed by Cathy Hodge (catcruiser101@yahoo.com)
  Signature Date: 2025-09-19 - 4:35:17 AM GMT - Time Source: server

- Agreement completed.
  2025-09-19 - 4:35:17 AM GMT

**Adobe Acrobat Sign**